```
 1                  IN THE UNTED STATES DISTRICT COURT
 2
 3              FOR THE EASTERN DISTRICT OF CALIFORNIA
 4
 5   GUILLERMO BONILLA, SANDRA    )    2:16-cv-01742 LEK
 6   AMAYA BONILLA,               )
 7                                )
 8                  Plaintiffs,   )
 9                                )
10      vs.                       )
11                                )
12   CALIFORNIA HIGHWAY PATROL AN )
13   AGENEY OF THE STATE OF       )
14   CALIFORNIA; OFFER MCKENZIE   )
15   AND SGT. PETERSON and DOES 1 )
16   TO 50,                       )
17                                )
18                  Defendants.   )
19   _____)
20
21
22       ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
```

23        Before the Court is Defendants California Highway

24   Patrol ("Highway Patrol") and Muriel McKenzie's ("McKenzie" and

25   collectively "Defendants") Motion for Summary Judgment

26   ("Motion"), filed on January 16, 2019.  [Dkt. no. 72.]

27   Plaintiffs Guillermo Bonilla and Sandra Amaya Bonilla

28   ("Plaintiffs") filed their memorandum in opposition on

29   February 26, 2019, and Defendants filed their reply on March 12,

30   2019.  [Dkt. nos. 83, 90.]  The Court finds this matter suitable

31   for disposition without a hearing pursuant to L.R. 230(g) of the

32   Local Rules of the United States District Court for the Eastern

33   District of California ("Local Rules").  Defendants' Motion is

34   hereby granted for the reasons set forth below.

1                            **BACKGROUND**

2  **I.   Underlying Facts**

3         The instant case arises out of the Highway Patrol's

4  seizure of Plaintiffs' community property, a 2000 utility

5  flatbed, with a vehicle identification number ("VIN") ending in

6  4008 ("the Flatbed"), and a 2005 Freightliner Truck, with a VIN

7  ending in 2164 ("the Truck").  [Decl. of Sandra Amaya Bonilla in

8  Opp. to Defs.' Motion for Summary Judgment ("S. Bonilla Decl."),

9  filed 2/26/19 (dkt. no. 85), at ¶ 3.]  Prior to the events in

10 question, the Truck had already been sold to Marco Tulio Osorio

11 Ochoa ("Osorio") for $25,000, [id. at ¶ 4,] and the Flatbed was

12 going to be leased to a third party, [id. at ¶ 11].

13     **A.   The Impoundment**

14         On August 27, 2014, Highway Patrol Officer Lance Ward

15 ("Ward") was working at the truck scales in Antelope, California

16 ("Antelope Scales") as a commercial enforcement officer, when he

17 observed the Truck towing the Flatbed in the loaded lane.

18 [Motion, Separate Statement of Undisputed Material Facts in

19 Supp. of Motion for Summary Judgment ("Defs.' SOF"), filed

20 1/16/19 (dkt. no. 72-1), at ¶¶ 6-7; Pltfs.' Response to Defs.'

21 Separate Statement of Undisputed Facts in Opp. to Defs.' Motion

22 for Summary Judgment ("Pltfs.' Responsive SOF"), filed 2/26/19

23 (dkt. no. 87), at ¶¶ 6-7 (admitting Defs.' ¶¶ 6-7).]  Ward has

24 been a commercial enforcement officer since 2008 and, in that

1  position, he inspects commercial vehicles for compliance with

2  the California Vehicle Code and other safety standards.  He must

3  therefore be familiar with the California Vehicle Code's

4  provisions regarding motor carriers of property.  [Defs.' SOF,

5  Exh. 2 (Decl. of Lance Ward in Supp. of Motion for Summary

6  Judgment ("Ward Decl.")) at ¶ 2.]

7         Any motor carrier of property is subject to inspection

8  by the Highway Patrol to ensure that the carrier is operating

9  safely on the California highways.  [Defs.' SOF at ¶¶ 1-2;

10  Pltfs.' Responsive SOF at ¶¶ 1-2.]  The parties also agree that

11  motor carriers must have proof of a permit issued by the

12  California Department of Motor Vehicles ("DMV").  A motor

13  carrier permit is required for a vehicle that either has three

14  axels, weighs ten-thousand pounds or more, or has a total length

15  of more than forty feet.  [Defs.' SOF at ¶¶ 3-4; Pltfs.'

16  Responsive SOF at ¶¶ 3-4.]

17         Defendants contend that the Truck and Flatbed required

18  a motor carrier permit, [Defs.' SOF at ¶ 5,] but Plaintiffs

19  argue a motor carrier permit was not required because the Truck

20  was not a "commercial vehicle" as defined under Cal. Veh. Code

21  § 260, [Pltfs.' Responsive SOF at ¶ 5].  Plaintiffs assert the

22  Truck was not a hired vehicle, was not performing any commercial

23  transport, and it had single-trip permit for August 27, 2014

24  ("Trip Permit").  [S. Bonilla Decl. at ¶ 7.]

1          Ward directed the driver of the Truck to pull over

2    because: the Truck was not displaying motor carrier

3    identification numbers, in violation of Cal. Veh. Code

4    § 34507.5; the Truck had a cracked windshield, in violation of

5    Cal. Veh. Code § 26710; the Truck was not displaying a company

6    name, in violation of Cal. Veh. Code § 27900; and there was

7    loose gravel, oil, and gas on top of the Flatbed, in violation

8    of Cal. Veh. Code § 24002(b).  [Ward Decl. at ¶ 4.]  When asked,

9    the driver of the Truck, James Carradine ("Carradine"),[1] provided

10   an expired driver's license, in violation of Cal. Veh. Code

11   § 12951(a), and had no proof of insurance, in violation of Cal.

12   Veh. Code § 16028(a).  [Ward Decl. at ¶ 4.]  Carradine disputes

13   Ward's statements about the gravel, oi and gas, driver's

14   license, and proof of insurance.  [Carradine Decl. at ¶¶ 7-9.]

15         Ward determined the Truck was registered to Rebel

16   Steel Trucking ("Rebel Steel"), and the registration had been

17   expired for more than six months.  He also determined Rebel

18   Steel did not have a motor carrier permit for the Truck.  [Ward

19   Decl. at ¶ 5.]  Carradine told Ward that he was the owner of JC

20   Trucking and that its carrier permit number was 213661, but Ward

21   determined that the DMV had not issued permit number 213661 to

---

[1] Carradine was previously employed by Plaintiffs as a
driver.  [Pltfs.' SOF, Decl. of James Carradine in Opp. to
Defs.' Motion for Summary Judgment ("Carradine Decl.") at ¶ 2.]

1    JC Trucking, nor had the DMV issued any motor carrier permit to

2    JC Trucking.  [Id.]  Ward also determined that the license plate

3    displayed on the Truck was assigned to another vehicle, and the

4    license plate actually assigned to the Truck was not being

5    displayed.  [Id. at ¶ 6.]  Plaintiffs deny there was a false

6    license plate on the Truck, and they assert the Trip Permit

7    allowed the Truck to be driven from one specified location to

8    another, without displaying a special license plate.

9    [S. Bonilla Decl. at ¶ 7.]  Sandra Bonilla states that, on

10   August 27, 2014, the Truck was displaying the Trip Permit, a

11   "Not for Hire" sign, and "[t]he only license plate that may have

12   been on the Truck was a Federal license plate for the Truck

13   issued by the United States Government."  [Id.]  Plaintiffs

14   assert these were "easily visible," [id.,[2]] and the Highway

15   Patrol "knew or should have known that the Truck was not for

16   hire and was being moved only for purpose of a sale that had

17   already occurred," [id. at ¶ 15].  In addition, Guillermo

18   Bonilla called Carradine and spoke to Ward, who used Carradine's

19   cellular phone.  Guillermo Bonilla told Ward the Truck had not

20   been hired and was not being used commercially.  He also told

21   Ward about the Trip Permit.  [Decl. of Guillermo Bonilla in Opp.

---

[2] Carradine has given statements that are similar to those in paragraphs 6 and 7 of the S. Bonilla Declaration.  See Carradine Decl. at ¶ 5.

1  to Defs.' Motion for Summary Judgment ("G. Bonilla Decl."),

2  filed 2/26/19 (dkt. no. 84), at ¶¶ 3-4.]

3          According to Ward, the Truck's assigned license plate

4  had a registration which had been expired since December 31,

5  2012.  Thus, the Truck was in violation of Cal. Vehicle Code

6  § 4000(a).  [Ward Decl. at ¶ 6.]  Ward and Highway Patrol

7  Vehicle Inspection Specialist Schmitz inspected the Truck and

8  Flatbed and noted other violations of the California Vehicle

9  Code, including: a "damaged or discolor[ed] windshield"; the

10 lack of a fire extinguisher in the Truck; and an illegible

11 emergency air dash knob.  [Id. at ¶ 7.]  Carradine states he did

12 not notice any damage or discoloration in the Truck's

13 windshield.  Further, the Truck did have a fire extinguisher,

14 other safety equipment, and a functional air dash knob at the

15 time of the impoundment.  [Carradine Decl. at ¶¶ 11-13.]

16         Based on his observations, Ward deemed the Truck and

17 Flatbed to be "out of service and not safe for operation on the

18 roadway," and he "used [his] discretionary authority" to impound

19 the Truck and Flatbed, pursuant to Cal. Veh. Code §§ 22651(o)

20 and 34660(d).  [Ward Decl. at ¶ 8.]  Plaintiffs dispute many of

21 Ward's observations, and Plaintiffs assert that, if there were

22 any violations of the Motor Vehicle Code, the violations would

23 have been "minor or technical violations" that could have been

24 addressed with a citation, instead of impounding the Truck and

1  Flatbed.  S. Bonilla Decl. at ¶ 7; see also Carradine Decl. at

2  ¶ 5.

3         Rincon Towing took possession of the Truck and

4  Flatbed, and Carradine received a copy of the paperwork.  [Ward

5  Decl. at ¶ 9.]  According to Guillermo Bonilla, Rincon Towing

6  drove the Truck and Flatbed from the Antelope Scales to its tow

7  yard because Rincon Towing did not have a vehicle available that

8  could tow the Truck and Flatbed.[3]  [G. Bonilla Decl. at ¶ 3.]

9         The parties agree that, at the time of the

10  impoundment, Sandra Bonilla owned the Truck, and Guillermo

11  Bonilla, who is also the sole owner of W Financial

12  Repo/Collections, owned the Flatbed.[4]  [Defs.' SOF at ¶¶ 33-34;

13  Pltfs.' Responsive SOF at ¶¶ 33-34.]  According to Ward, he

14  never communicated with Plaintiffs regarding either the

15  August 27, 2014 inspection or the impoundment.  [Ward Decl. at

16  ¶ 10.]  Neither Plaintiffs nor anyone else ever provided Ward

17  with evidence that the Truck and Flatbed were covered by a motor

18  vehicle carrier permit which was valid on August 27, 2014, nor

---

[3] Carradine states he saw someone from Rincon Towing drive
the Truck and Flatbed from the Antelope Scales.  [Carradine
Decl. at ¶ 6.]

[4] Defendants' SOF and Plaintiffs' Responsive SOF refer to
the entity as "W Financial Repo/Collections," [Defs.' SOF at
¶ 34; Pltfs.' Responsive SOF at ¶ 34,] but during Guillermo
Bonilla's deposition, the entity was referred to as "W
Financial/Repo Collectors."  [Defs.' SOF, Exh. 4 (trans. excerpt
of G. Bonilla's 11/1/18 depo. ("G. Bonilla Depo.")) at 45.]

1   was he provided with evidence that either the Truck or the

2   Flatbed had a vehicle registration that was valid on August 27,

3   2014.  [Id. at ¶¶ 11-12.]

4          According to Plaintiffs, the Truck and Flatbed

5   received a Highway Patrol citation two or three days prior to

6   August 27, 2014.  Carradine took the Truck and Flatbed to the

7   Antelope Scales on August 27, 2014 to have the Highway Patrol

8   resolve the citation so that the Truck could be delivered to

9   Osorio.[5]  All other citations on the Truck had been resolved

10  prior to August 27, 2014.  See S. Bonilla Decl. at ¶ 5;

11  Carradine Decl. at ¶¶ 3, 10-11.  Carradine does not remember the

12  name of the Highway Patrol officer who issued the citation that

13  Carradine was trying to resolve on August 27, 2014

14  ("Officer X").  According to Carradine, Officer X did not find

15  any damage or discoloration in the Truck's windshield when he

16  issued the citation.  [Carradine Decl. at ¶¶ 10-11.]  Officer X

17  also told Carradine not to display a company name or identifying

18  numbers on the Truck because that would make it appear that the

19  Truck was doing business or being used for commercial purposes.

20  Officer X gave that advice because Officer X knew the truck had

---

[5] The citation was issued because the Truck's air lines had
"a kink in them, and the kink needed to be fixed because that
was a safety issue even for a one-day Trip Permit for the
truck."  [Carradine Decl. at ¶ 16.]  That was the only violation
that Carradine was attempting to resolve when he went to the
Antelope Scales on August 27, 20014.  [Id.]

1   been sold and was merely being transported to the buyer.  [Id.

2   at ¶ 14.]

3           Plaintiffs assert the Highway Patrol "and many of its

4   officers at the Antelope Scales had often targeted and harassed

5   trucks and vehicles belonging to [Plaintiffs] due to the ill

6   will that the [Highway Patrol] officers had toward [Plaintiffs]

7   and [their] employees."  S. Bonilla Decl. at ¶ 6; G. Bonilla

8   Decl. at ¶ 7; see also Carradine Decl. at ¶ 4 ("From my own

9   experience, the [Highway Patrol] and its officers at the

10  Antelope Scales had consistently targeted and harassed trucks

11  and vehicles belonging to the Bonillas due to the ill will that

12  the CHP officers had toward Plaintiff Guillermo Bonilla and his

13  employees.").

14          According to Carradine, on August 27, 2014, after he

15  entered the Highway Patrol office at the Antelope Scales, but

16  before Ward inspected the Truck, "the first thing that Officer

17  Ward said to [Carradine] . . . were words to the effect that

18  'that's Bonilla's truck and I'm going to have it towed'."

19  [Carradine Decl. at ¶ 4.]  After Ward said that, he "started

20  giving [Carradine] a real hard time about the Truck and the

21  Flatbed," and he told Carradine he was going to impound them,

22  which he did later that day.  [Id.]  Carradine also states

23  Officer X was at the Antelope Scales on August 27, 2014, and

24  Ward called Officer X to the Truck before the impoundment.

1    After the impoundment, Officer X drove Carradine to the bus

2    station.  [Id. at ¶ 15.]  During that ride, Officer X said,

3    "what Officer Ward was doing was 'overboard'" and, if Officer X

4    "had known what Officer Ward was doing, he would not have come

5    out to the truck" when Ward called him.  [Id.]  Based on these

6    statements, Carradine believes Officer X "strongly disapproved

7    of what Officer Ward was doing because it was abusive and

8    wrongful conduct."  [Id.]

9         **B.    <u>Release Attempts</u>**

10            Sandra Bonilla contacted Rincon Towing to try to

11   obtain the release of the Truck and Flatbed, and Rincon Towing

12   referred her to McKenzie to obtain authorization for the

13   release.  According to Sandra Bonilla, McKenzie said that, in

14   order for the Truck and Flatbed to be released, Sandra Bonilla

15   had to obtain a motor carrier permit and repair the violations

16   that the Truck was cited for.  Sandra Bonilla obtained the

17   permit and purchased the parts necessary for the repairs.  When

18   Sandra Bonilla attempted to arrange to for the repairs to be

19   made to the Truck inside Rincon Towing's yard, Rincon said she

20   had to obtain McKenzie's authorization.  Sandra Bonilla

21   contacted McKenzie, who refused to authorize the repairs, but

22   did not provide an explanation for the refusal.  [S. Bonilla

23   Decl. at ¶¶ 8-9.]  According to Guillermo Bonilla, when he

24   explained to McKenzie that Rincon Towing was not allowing

1    Plaintiffs to repair the Truck in the tow yard, McKenzie "said

2    words to the effect, 'Forget about the repairs, get me a current

3    motor carrier permit and I will release the Truck'."

4    [G. Bonilla Decl. at ¶ 10.]   He delivered "a copy of Sandra

5    Bonilla's current and valid motor carrier permit for Officer

6    McKenzie" at the Highway Patrol office, but McKenzie never

7    attempted to contact them after that.   [Id.]

8          Sandra Bonilla asserts McKenzie's refusal to authorize

9    repairs in the tow yard made it impossible to obtain the release

10   of the Truck and Flatbed.   Sandra Bonilla also contends there

11   was no legal basis to require the completion of repairs prior to

12   release, [S. Bonilla Decl. at ¶ 9,] and the Highway Patrol "knew

13   or should have known that the Truck was not . . . being moved

14   . . . for any reasons that required repairs, current

15   registration or permits," [id. at ¶ 15].

16         Plaintiffs showed McKenzie a current motor carrier

17   permit,[6] but McKenzie refused to authorize the release of the

18   Truck and Flatbed.   According to Sandra Bonilla, McKenzie said

19   Sandra Bonilla had to obtain Defendant Sergeant Peterson's

20   ("Peterson") authorization for the release, but Peterson told

---

[6] The permit that Sandra Bonilla refers to in paragraphs 8
and 10 appears to be another trip permit that permitted the
Truck to be towed from the Rincon Towing yard to Osorio.   See
S. Bonilla Decl. at ¶ 16.

1   Sandra Bonilla she had to obtain McKenzie's authorization.[7]  The

2   Highway Patrol eventually informed Sandra Bonilla by telephone

3   that it was not going to authorize the release of the Truck to

4   her.  [Id. at ¶ 10.]  Sandra Bonilla states the Highway Patrol

5   never gave her "a valid reason" why the Flatbed was not released

6   to her.  [Id. at ¶ 11.]  According to Sandra Bonilla, neither

7   McKenzie, Peterson, nor anyone else from the Highway Patrol ever

8   informed her that a current registration for each vehicle was

9   required to obtain the release of the Truck and Flatbed.  Id. at

10  ¶¶ 12-13; see also G. Bonilla Decl. at ¶¶ 6, 9-10 (similar

11  statements by Guillermo Bonilla that he was never so informed).

12      McKenzie states Plaintiffs never provided her with any

13  documents regarding the Truck or Flatbed, nor did Plaintiffs, or

14  anyone else, provide her with information showing that the Truck

15  and Flatbed had valid registrations at the time of the

16  impoundment or afterward.  Further, no one advised McKenzie that

17  Plaintiffs provided proof of registration for the Truck and

18  Flatbed to the Highway Patrol.  [Defs.' SOF, Exh. 1 (Decl. of

19  Muriel McKenzie in Supp. of Motion for Summary Judgment

---

[7] Peterson has not been served and has not appeared in this
case.  Defendants' motion to dismiss Plaintiffs' claims against
Peterson, [filed 1/29/19 (dkt. no. 75),] will be addressed in a
separate order.

1  ("McKenzie Decl.")) at ¶¶ 4-5.[8]]  The parties agree that

2  Plaintiffs only spoke with McKenzie on the telephone.  [Defs.'

3  SOF at ¶ 31; Pltfs.' Responsive SOF at ¶ 31.]

4         The parties also agree that: on October 20, 2014,

5  Rincon Towing sold the Truck to Cesar Cazarez for $2,500.00 and

6  Rincon Towing sold the Flatbed to Jose Jaime for $2,000.00;[9]

7  McKenzie did not authorize Rincon Towing to sell the Truck and

8  Flatbed; and she was not immediately advised that they had been

9  sold.  [Defs.' SOF at ¶¶ 35-37; Pltfs.' Responsive SOF at ¶¶ 35-

10  37.]  It is undisputed that: neither Plaintiffs nor anyone else

11  had a valid registration for the Truck from the date of the

12  impoundment to the date of the sale; the Truck's registration

13  had been expired since December 31, 2012; neither Plaintiffs nor

14  anyone else had a valid registration for the Flatbed from the

15  date of the impoundment through November 12, 2014; and the

16  Flatbed's registration had been expired since July 31, 2013.

17  [Defs.' SOF at ¶¶ 38-42; Pltfs.' Responsive SOF at ¶¶ 38-42.]

---

[8] During the relevant period, McKenzie was employed by the
Highway Patrol and served as its Motor Carrier Permit Officer.
[McKenzie Decl. at ¶ 2.]  Her duties included: issuing
identification numbers to commercial motor carriers of property
that operated in California; conducting follow-up inquiries
regarding carriers that violated the permit requirements; and
authorizing the impoundment of vehicles that the DMV confirmed
had a suspended motor carrier permit.  [Id.]

[9] Sandra Bonilla believes the Truck and Flatbed were sold
"at a lien sale."  [S. Bonilla Decl. at ¶ 14.]

1  **II.  <u>This Action</u>**

2          Plaintiffs initiated this action in state court on

3  November 24, 2015, and the Highway Patrol removed the case on

4  July 25, 2016, based on federal question jurisdiction.  [Notice

5  of Removal of Action; Under 28 U.S.C. § 1441(a) (Federal

6  Question) ("Notice of Removal"), filed 7/25/16 (dkt. no. 1),

7  Exh. A (Complaint – Personal Injury, Property Damage, Wrongful

8  Death ("Complaint")); Notice of Removal at ¶¶ 4-5.[10]]  On

9  August 1, 2016, the Highway Patrol filed a motion to dismiss the

10  Complaint, which was granted in part and denied in part in a

11  January 9, 2017 order, which was amended on January 17, 2017

12  ("1/17/17 Order").  [Dkt. nos. 7, 21, 23.[11]]  Plaintiffs filed

13  their First Amended Complaint ("Amended Complaint") on March 16,

14  2017.  [Dkt. no. 29.]

15          The Amended Complaint alleges the following claims: a

16  negligence claim against Defendants and Peterson ("Count I"); an

17  intentional tort claim against Defendants and Peterson

18  ("Count II"); a claim against Defendants and Peterson alleging

19  violations of the mandatory duties imposed by Cal. Veh. Code

20  §§ 22651 and 34660 ("Count III"); and a 42 U.S.C. § 1983 claim

---

[10] McKenzie had not been served at the time the Highway
Patrol removed the action.  [Notice of Removal at ¶ 3.]

[11] The 1/17/17 Order is also available at 2017 WL 202550.

14

1  against McKenzie and Peterson alleging violation of Plaintiffs'

2  Fourteenth Amendment right to due process ("Count IV").

3          In the instant Motion, Defendants argue they are

4  entitled to summary judgment on all of Plaintiffs' claims

5  because all the claims are based upon the theory that §§ 22651

6  and 34660 required the Highway Patrol to release the Truck and

7  the Flatbed to Plaintiffs.  Defendants assert release of the

8  Truck and Flatbed was not mandatory because neither vehicle had

9  a valid registration at the time of the impoundment, nor did

10  Plaintiffs obtain valid registrations for the vehicles after the

11  impoundment.  Further, Defendants argue they have immunity as to

12  Plaintiffs' state law claims under various provisions of the

13  California Government Code, including immunity for discretionary

14  decisions and immunity for acts or omissions occurring in the

15  execution or enforcement of state law.

16          As to Count IV, Defendants argue McKenzie cannot be

17  held liable for Ward's decision to impound the Truck and

18  Flatbed, and they argue McKenzie cannot be held liable for the

19  decision not to release the Truck and Flatbed because there is

20  no evidence that Plaintiffs provided proof of valid

21  registration.  Further, even if there was some potential

22  liability, McKenzie is entitled to qualified immunity.

1                          **DISCUSSION**

2   **I.   Request to Name Ward as a Defendant**

3           At the outset, this Court must address Plaintiffs'

4   request for leave to name Ward as Defendant "DOE No. 1."  [Mem.

5   in Opp. at 21.]  The request is denied because Plaintiffs'

6   claims against the Doe Defendants named in the Amended Complaint

7   have already been dismissed.  See Status (Pre-trial Scheduling)

8   Order, filed 2/9/18 (dkt. no. 53), at 1 ("This action, including

9   any counterclaims, cross-claims, and third party complaints is

10  hereby DISMISSED as to all DOE or other fictitiously-named

11  defendants." (emphases in original)).

12  **II.  State Law Claims**

13          As with Counts I, II, and III of the original

14  Complaint, Counts I, II, and III of the Amended Complaint allege

15  state law claims, to which state substantive law applies.  See

16  1/17/17 Order, 2017 WL 202550, at *2.  Count I is based on both

17  the impoundment of the Truck and Flatbed and the refusal to

18  release them.  See, e.g., Amended Complaint at ¶ 17 ("The

19  [Highway Patrol] and its agents, Officer McKenzie and Sgt.

20  Peterson had a legal duty to use due care when seizing and

21  refusing to release Plaintiff's property.").  Count II also

22  appears to be based on both the impoundment and the seizure.

23  See id. at ¶¶ 20-21 (alleging, among the acts or omissions in

24  which "defendants negligently caused the damage to plaintiffs,"

1   that the Highway Patrol, "through its agents, acting within the

2   scope and employment as law enforcement officers of the [Highway

3   Patrol], seized" the Truck and Flatbed and the Highway Patrol

4   "and its agents refused to release the property").  Count III is

5   based upon the failure to release the Truck and the Flatbed.

6   See, e.g., id. at pg. 10, ¶ 23 (alleging the Highway Patrol "and

7   its agents' . . . failure to release the property . . .

8   proximately caused Plaintiff's financial loss").

9       **A.   Claims Based on the Impoundment**

10          **1.   McKenzie**

11          Cal. Gov't Code § 820 states:

12          (a)  Except as otherwise provided by statute
13          (including Section 820.2), a public employee is
14          liable for injury caused by his act or omission
15          to the same extent as a private person.
16
17          (b)  The liability of a public employee
18          established by this part (commencing with
19          Section 814) is subject to any defenses that
20          would be available to the public employee if he
21          were a private person.
22
23  Cal. Gov't Code § 820.8 states, in pertinent part: "Except as

24  otherwise provided by statute, a public employee is not liable

25  for an injury caused by the act or omission of another person."

26  Even supervisory personnel must have personal involvement in

27  order to be held liable under California law for the tortious

28  acts of their subordinates.  M.B. ex rel. Beverly v. Cal. Dep't

29  of Corr. & Rehab., No. 2:17-cv-2395 WBS DB, 2018 WL 4050743, at

1  *7 (E.D. Cal. Aug. 23, 2018) (quoting Milton v. Nelson, 527 F.2d

2  1158, 1159 (9th Cir. 1975) (holding that under California law,

3  including § 820.8, a prison director, warden, and associate

4  warden could not be held vicariously liable for the actions of

5  their subordinates)), *reconsideration granted in part on other*

6  *grounds*, 2018 WL 5024093, at *1 (Oct. 16, 2018).

7         There is no evidence in the instant case suggesting

8  that McKenzie was personally involved in the impoundment of the

9  Truck and Flatbed.  Nor is there any evidence that: 1) McKenzie

10 had a supervisory role over Ward, or anyone else involved in the

11 impoundment; and 2) her acts as a supervisor were a proximate

12 cause of the impoundment.  Cf. id. (stating that, in order to

13 survive a motion to dismiss, the plaintiff "must allege

14 sufficient facts to allege that [the defendant]'s own acts as a

15 supervisor proximately caused the injury" (citation omitted)).

16 Therefore, even when viewed in the light most favorable to

17 Plaintiffs,[12] the evidence is insufficient to raise a genuine

18 issue of material fact as to the state law claims against

19 McKenzie based on the impoundment of the Truck and Flatbed, and

20 McKenzie is entitled to summary judgment as to those portions of

---

[12] In ruling on a motion for summary judgment, "the judge
must view the evidence in the light most favorable to the
nonmoving party and make all reasonable inferences in favor of
that party."  Eat Right Foods Ltd. v. Whole Foods Mkt., Inc.,
880 F.3d 1109, 1118 (9th Cir. 2018) (citing Tolan v. Cotton, 134
S. Ct. 1861, 1866-68 (2014) (per curiam)).

1 Counts I and II.  See Fed. R. Civ. P. 56(a) ("The court shall

2 grant summary judgment if the movant shows that there is no

3 genuine dispute as to any material fact and the movant is

4 entitled to judgment as a matter of law.").

5          **2.  Highway Patrol**

6          To the extent that Plaintiffs' claims against the

7 Highway Patrol are based on the impoundment of the Truck and

8 Flatbed, Plaintiffs argue the Highway Patrol is liable for the

9 actions of Ward and others.  Cal. Gov't Code § 815.2 states:

10                    (a)  A public entity is liable for injury
11                    proximately caused by an act or omission of an
12                    employee of the public entity within the scope of
13                    his employment if the act or omission would,
14                    apart from this section, have given rise to a
15                    cause of action against that employee or his
16                    personal representative.
17
18                    (b)  Except as otherwise provided by statute, a
19                    public entity is not liable for an injury
20                    resulting from an act or omission of an employee
21                    of the public entity where the employee is immune
22                    from liability.
23
24 Further, Cal. Gov't Code § 820.2 states: "Except as otherwise

25 provided by statute, a public employee is not liable for an

26 injury resulting from his act or omission where the act or

27 omission was the result of the exercise of the discretion vested

28 in him, whether or not such discretion be abused."

29          Ward impounded the Truck and Flatbed on the grounds

30 that the Truck's registration was expired and the lack of a

1   valid license.[13]   [Ward Decl. at ¶ 8.]   Thus, they were impounded

2   pursuant to Cal. Veh. Code §§ 22651(o)(1)(A) and 34660(d).

3   Section 22651 states, in pertinent part:

4               A peace officer, as defined in Chapter 4.5
5               (commencing with Section 830) of Title 3 of
6               Part 2 of the Penal Code, or a regularly employed
7               and salaried employee, who is engaged in
8               directing traffic or enforcing parking laws and
9               regulations, of a city, county, or jurisdiction
10              of a state agency in which a vehicle is located,
11              **may remove** a vehicle located within the
12              territorial limits in which the officer or
13              employee may act, under the following
14              circumstances:

15

16                  . . . .

17

18                  (o)(1) If a vehicle is found or operated
19                  upon a highway, public land, or an offstreet
20                  parking facility under any of the following
21                  circumstances:

22

23                      (A)  With a registration expiration
24                      date in excess of six months before the
25                      date it is found or operated on the
26                      highway, public lands, or the offstreet
27                      parking facility.

28

29   (Emphasis added.)   Similarly, § 34662(d) states, in pertinent

30   part:

---

[13] Ward also describes a number of other violations, [Ward Decl. at ¶¶ 4-7,] and Plaintiffs have submitted testimony disputing those violations, see, e.g., Carradine Decl. at ¶¶ 11-13.  Even though there are genuine disputes of fact those purported violations, they are not discussed here because they are not material to Plaintiffs' state law claims based on the impoundment of the Truck and Flatbed.  See Eat Right, 880 F.3d at 1118 ("A material fact is one 'that might affect the outcome of the suit under the governing law.'" (quoting Anderson v. Liberty Lobby Inc., 477 U.S. 242, 248, 106 S. Ct. 2505 (1986))).

1           A member of the Department of the California
2           Highway Patrol **may impound** a vehicle or
3           combination of vehicles operated by a motor
4           carrier of property, when the vehicle or
5           combination of vehicles is found upon a highway,
6           any public lands, or an offstreet parking
7           facility and the motor carrier is found to be in
8           violation of this section or of subdivision (a)
9           of Section 34620.

11  Cal. Veh. Code § 34620(a) establishes the requirements of a

12  registered motor carrier identification number and valid motor

13  carrier permit.

14          Because both § 22651(o)(1)(A) and § 34660(d) use the

15  term "may," they allow state officials to make a discretionary

16  decision to impound a vehicle.  Thus, under § 820.2, Ward cannot

17  be held liable under California state law for the decision to

18  impound the Truck and Flatbed, whether or not he abused that

19  discretion.  Ward's immunity from state law claims arising from

20  that decision also means that the Highway Patrol also cannot be

21  held liable for those state law claims.  See § 815.2(b).  Even

22  when viewed in the light most favorable to Plaintiffs, the

23  evidence is insufficient to raise a genuine issue of material

24  fact as to the state law claims against the Highway Patrol based

25  on the impoundment of the Truck and Flatbed, and the Highway

26  Patrol is entitled to summary judgment as to those portions of

27  Counts I and II.

1    **B.    Claims Based on the Refusal to Release**

2         **1.    McKenzie**

3         As to Count III and the portions of Counts I and II

4    based on the refusal to release the Truck and Flatbed,

5    Defendants argue the claims against McKenzie fail because the

6    decision not to release the vehicles was a discretionary

7    decision.  Section 22651(o)(3) states, in pertinent part:

8         For the purposes of this subdivision, the vehicle
9         **shall be released** under any of the following
10        circumstances:
11
12             (A)  If the vehicle has been removed
13             pursuant to subparagraph (A), (B), or (C) of
14             paragraph (1), to the registered owner of,
15             or person in control of, the vehicle only
16             after the owner or person furnishes the
17             storing law enforcement agency with proof of
18             current registration and a valid driver's
19             license to operate the vehicle.
20
21   (Emphasis added.)  Similarly, when a vehicle is impounded

22   pursuant to § 34660(d),

23        the vehicle **shall be released** to the registered
24        owner or authorized agent only after the
25        registered owner or authorized agent furnishes
26        the Department of the California Highway Patrol
27        with proof of current registration, a currently
28        valid driver's license of the appropriate class
29        to operate the vehicle or combination of
30        vehicles, and proof of compliance with this
31        division.
32
33   (Emphasis added.)  Because both § 22651(o)(3)(A) and § 334660(d)

34   state that an impounded vehicle "shall be released" when the

35   described documentation is provided, the decision whether to

1  release an impounded vehicle is not a discretionary decision.

2  Section 820.2 therefore does not automatically exempt McKenzie

3  from liability for Plaintiffs' claims arising from the refusal

4  to release the Truck and Flatbed after impoundment.

5       However, it is undisputed that neither the Truck nor

6  the Flatbed had a valid registration at any time from the time

7  that they were impounded until Rincon Towing sold them.  See

8  Defs.' SOF at ¶¶ 38-42; Pltfs.' Responsive SOF at ¶¶ 38-42.

9  Thus, Plaintiffs did not provide the documentation that would

10  have made the release of the vehicles mandatory under

11  § 22651(o)(3)(A) and § 334660(d).  Plaintiffs' position is that

12  Defendants were negligent in their refusal to release the Truck

13  and Flatbed because Defendants never informed Plaintiffs that

14  current registrations were necessary.  See S. Bonilla Decl. at

15  ¶¶ 12-13; G. Bonilla Decl. at ¶¶ 6, 9-10.

16       Under California law, "the well-known elements of any

17  negligence cause of action" are "duty, breach of duty, proximate

18  cause and damages."  Lockheed Martin Corp. v. Superior Court, 63

19  P.3d 913, 919 (Cal. 2003) (citation and internal quotation marks

20  omitted).  Plaintiffs assert "Defendants had a mandatory duty,

21  at a minimum, to inform" them that current registrations were

22  required to obtain the release of the Truck and the Flatbed.

23  [Mem. in Opp. at 13-14.]  Plaintiffs, however, cite no legal

24  authority to support their position that Defendants had a duty

1   to inform Plaintiffs of the requirements for release that are

2   clearly stated in § 22651(o)(3)(A) and § 334660(d).  Nothing in

3   the language of those statutes requires that notice of the

4   release requirements be given, apart from the notice provided in

5   the publicly available statutes themselves.  While Plaintiffs'

6   frustration with the situation is understandable, there is no

7   legal support for their position that McKenzie's failure to

8   inform Plaintiffs of the requirements to obtain the release of

9   the Truck and Flatbed was negligent.  Because Plaintiffs did not

10  satisfy the requirements of § 22651(o)(3)(A) and § 334660(d),

11  McKenzie did not have a mandatory duty to release the Truck and

12  Flatbed.  Even viewing the record in the light most favorable to

13  Plaintiffs, there is insufficient evidence to raise a genuine

14  issue of material fact as to the state law claims against

15  McKenzie based on the refusal to release the Truck and Flatbed,

16  and McKenzie is entitled to summary judgment as to Count III and

17  the portions of Counts I and II based on the refusal to release

18  the Truck and Flatbed.

19          **2.   Highway Patrol**

20          As noted in the 1/17/17 Order, Cal. Gov't Code § 815

21  and the case law interpreting it require "a **specific statute**

22  declaring them to be liable, or at least creating some specific

23  duty of care[,]" in order for a public entity to be subject to

24  tort liability.  1/17/17 Order, 2017 WL 202550, at *2 (emphasis

1   in 1/17/17 Order) (quoting Eastburn v. Reg'l Fire Prot. Auth.,

2   80 P.3d 656, 660 (Cal. 2003)).  Because the specific statutes

3   relevant to this case, § 22651(o)(3)(A) and § 334660(d), did not

4   make the release of the Truck and Flatbed mandatory, there is no

5   specific statute that either rendered the Highway Patrol liable

6   for the refusal to release the Truck and Flatbed or created a

7   specific duty of care under the circumstances of this case.

8   Even viewing the record in the light most favorable to

9   Plaintiffs, there is insufficient evidence to raise a genuine

10  issue of material fact as to the state law claims against the

11  Highway Patrol based on the refusal to release the Truck and

12  Flatbed.  The Highway Patrol is therefore entitled to summary

13  judgment as to Count III and the portions of Counts I and II

14  based on the refusal to release the Truck and Flatbed.

15  **III. <u>Section 1983 Claim</u>**

16          Count IV alleges a claim against McKenzie, pursuant to

17  42 U.S.C. § 1983, for violations of Plaintiffs' Fourteenth

18  Amendment rights.  Section 1983 states, in pertinent part:

19              Every person who, under color of any statute,
20              ordinance, regulation, custom, or usage, of any
21              State or Territory or the District of Columbia,
22              subjects, or causes to be subjected, any citizen
23              of the United States or other person within the
24              jurisdiction thereof to the deprivation of any
25              rights, privileges, or immunities secured by the
26              Constitution and laws, shall be liable to the
27              party injured in an action at law, suit in
28              equity, or other proper proceeding for
29              redress . . . .

1
2 This district court has stated:

3           "The Fourteenth Amendment protects individuals
4           against the deprivation of liberty or property by
5           the government without due process.  A section
6           1983 claim based upon procedural due process thus
7           has three elements: (1) a liberty or property
8           interest protected by the Constitution; (2) a
9           deprivation of the interest by the government;
10          (3) lack of process."  Portman v. County of Santa
11          Clara, 995 F.2d 898, 904 (9th Cir. 1993).
12
13 Ciurar v. California, No. 2:20-cv-2089 JAM DB PS, 2021 WL

14 1222875, at *2 (E.D. Cal. Apr. 1, 2021).

15     **A.**   **Impoundment**

16          Defendants acknowledge that the impoundment of a

17 vehicle constitutes a seizure for purposes of the Fourth

18 Amendment.  [Mem. in Supp. of Motion at 13 (citing Miranda v.

19 City of Cornelius, 429 F.3d 858, 862 (9th Cir. 2005)).]

20 However, this district court has recognized:

21          To be held liable under Section 1983, each
22          defendant must have personally participated in
23          the deprivation of the plaintiff's rights.
24          Ashcroft v. Iqbal, 556 U.S. 662 (2009); Jones v.
25          Williams, 297 F.3d 930, 934 (9th Cir. 2002).  The
26          statute requires an actual connection or link
27          between the actions of the defendants and the
28          deprivation alleged to have been suffered by the
29          plaintiff.  See Monell v. Department of Social
30          Services, 436 U.S. 658 (1978); Rizzo v. Goode,
31          423 U.S. 362 (1976).  The Ninth Circuit has held
32          that "[a] person 'subjects' another to the
33          deprivation of a constitutional right, within the
34          meaning of section 1983, if he does an
35          affirmative act, participates in another's
36          affirmative acts or omits to perform an act which
37          he is legally required to do that causes the

26

1  deprivation of which complaint is made." <u>Johnson</u>
2  <u>v. Duffy</u>, 588 F.2d 740, 743 (9th Cir. 1978).
3
4  <u>Vivanco v. Cal. Dep't of Corr. & Rehab.</u>, Case No.: 1:17-cv-

5  00434-BAM, 2019 WL 2764397, at *5 (E.D. Cal. July 2, 2019)

6  (alteration in <u>Vivanco</u>), <i>aff'd</i>, 817 F. App'x 492 (9th Cir.

7  2020).  There is no evidence in the record which raises a

8  genuine issue of material fact as to the issue of whether

9  McKenzie personally participated in the impoundment of the Truck

10  and Flatbed.  Nor is there any evidence which raises a genuine

11  issue of material fact as to the issue of whether McKenzie had

12  supervisory authority over anyone involved in the impoundment.

13  <u>Cf.</u> <u>id.</u> at *7 (discussing when a supervisor can be held liable,

14  even without personal participation in the constitutional

15  deprivation).  McKenzie is therefore entitled to summary

16  judgment as to the portion of Count IV based on the impoundment

17  of the Truck and Flatbed.

18      **B.   Refusal to Release**

19      The issue of whether Plaintiffs had a constitutionally

20  protected right to the release of the Truck and Flatbed is

21  similar to the issue of whether a plaintiff has a

22  constitutionally protected right to receive a government

23  benefit, like a license or a permit.  In that context, this

24  district court has stated:

25      "Property interests are not created by the
26      Constitution but 'by existing rules or

understandings that stem from an independent
source such as state law . . . .'"  Thornton v.
City of St. Helens, 425 F.3d 1158, 1164 (9th Cir.
2005) (quoting [Bd. of Regents of State Colls.
v.] Roth, 408 U.S. [564,] 577 [(1972)]).  "In
some instances, a person can have a
constitutionally protected property interest in a
government benefit, such as a license or permit."
[Gerhart v. Lack Cnty.], 637 F.3d [1013,] 1019
[(9th Cir. 2011)] (citing Roth, 408 U.S. at 577).
But a plaintiff who asserts a property interest
in a permit or other government benefit cannot
simply demonstrate that he had a "unilateral
expectation" or an "abstract need or desire" for
that benefit; rather, he must demonstrate "a
legitimate claim of **entitlement** to it."  Roth,
408 U.S. at 577 (emphasis in original).

       Whether plaintiffs have an "expectation of
entitlement sufficient to create a property
interest . . . depend[s] largely upon the extent
to which the statute contains mandatory language
that restricts the discretion of the
decisionmaker."  Allen v. City of Beverly Hills,
911 F.2d 367, 370 (9th Cir. 1990) (quoting
Jacobson v. Hannifin, 627 F.2d 177, 180 (9th Cir.
1980)).  "[A]n entitlement to a government permit
exists when a state law or regulation requires
that the permit be issued once certain
requirements are satisfied."  Gerhart, 637 F.3d
at 1019 (citing Groten v. California, 251 F.3d
844, 850 (9th Cir. 2001)).  By contrast, if the
decision to grant a permit or other benefit is
discretionary, plaintiffs have no property
interest in that benefit.  Doyle v. City of
Medford, 606 F.3d 667, 672 (9th Cir. 2010)
(citing Jacobson, 627 F.3d [sic] at 180).

Anselmo v. Mull, Civ. No. 2:12-01422 WBS EFB, 2013 WL 5817560,

at *8-9 (E.D. Cal. Oct. 29, 2013) (emphasis and some alterations

in Anselmo).

       Because Plaintiffs did not satisfy the requirements of

§ 22651(o)(3)(A) and § 334660(d), they did not have "a

28

1   legitimate claim of entitlement to" the release of the Truck and

2   Flatbed under the circumstances of this case.  See Roth, 408

3   U.S. at 577.  Plaintiffs' inability to establish a protected

4   property right in the release of the Truck and Flatbed is fatal

5   to their § 1983 claim against McKenzie.  McKenzie is therefore

6   entitled to summary judgment as to the portion of Count IV based

7   on the refusal to release the Truck and Flatbed.

8                           **CONCLUSION**

9        On the basis of the foregoing, Defendants' Motion for

10  Summary Judgment, filed January 16, 2019, is HEREBY GRANTED.

11  There being no remaining claims against the Highway Patrol or

12  McKenzie, the Clerk's Office is DIRECTED to: 1) terminate

13  McKenzie as a party immediately; and 2) terminate the Highway

14  Patrol as a party thirty days from the filing of this order.

15  The Highway Patrol will remain listed as a party during that

16  time because of its obligations under other orders issued by

17  this Court.

18        IT IS SO ORDERED.

19

1               DATED AT HONOLULU, HAWAII, April 21, 2021.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

GUILLERMO BONILLA, ET AL. VS. CALIFORNIA HIGHWAY PATROL, ET AL;
1:16-CV-01742 LEK; ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT